UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MANI HOSPITALITY, LLC | * | CIVIL ACTION NO. 3:23-cv-01447 |
| Plaintiff | * | |
| VERSUS | * | JUDGE SHELLY D. DICK |
| SAFEPOINT INSURANCE COMPANY | * | |
| Defendant | * | MAGISTRATE ERIN WILDER-DOOMES |

* * * * * * * * * * * * * * * * * * *

**JOINT STATUS REPORT**

**A.     JURISDICTION**

Jurisdiction of this Court over this action is invoked under 28 U.S.C. §1332(a)(1), as there is complete diversity of citizenship between Plaintiff and Defendant. The matter in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand Dollars ($75,000).

**B.     BRIEF EXPLANATION OF THE CASE**

   **1. Plaintiff's Claims**:

   a) <u>Breach of Contract</u>:  The insurance policy issued by Defendant to Complainants under Policy No. SLCP0001200-01 (the "*Policy*") is a binding, legal contract covering Complainants dwelling, other structures, and personal property located at 5600 Bluebonnet Blvd., Baton Rouge, Louisiana 70809 and additional living expenses incurred by Complainants from damages caused by perils, including Hurricane Ida.  *See* La. C.C. art. 1906.  A contract was created between the parties where both parties obligated themselves to perform certain services.  *See* La. C.C. art. 1906.  Complainants obligated themselves to pay an insurance premium and Defendants obligated themselves to promptly handle and pay undisputed funds from an insurance claim.  Complainants timely paid the insurance premiums.  On or about August 29, 2021, Hurricane Ida made landfall in Southeast Louisiana causing damage to Complainants' dwelling, other structures, and personal property and

forcing Complainants to incur additional living expenses. Complainants promptly filed a claim and were provided Claim No. 10001709 (the "*Claim*"). Complainants allege Defendants breached the contract by failing to adequately and timely pay the full value of the Claim. Complainants seek damages against Defendant for: a) Diminution of the value of the Property; b) costs to adequately repair the property; c) costs to adequately replace Complainants Personal Property; d) loss of use; e) reimbursement for repairs Complainants made to the property; f) costs for content manipulation to repair the property; g) inconvenience; h) mental anguish; i) repair and remediation expenses; j) loss of use of enjoyment of the property; k) loss of business opportunities; l) damage to the property; m) loss of investment value of funds used to offset Defendant's failure to pay, including lost interest; n) pecuniary and non-pecuniary damages; o) penalties, damages, and attorneys' fees; q) other professional fees and costs of litigation; r) costs of these proceedings; s) costs of estimates, estimators, adjusters, professions, and/or experts; and t) other damages as will be shown at trial

b) <u>Violation of La. R.S. § 22:1892</u>: Complainants allege Defendant violated La. R.S. § 22:1892 obligating Defendant to: (a) pay the Claim and make a written offer to settle the Claim within thirty (30) days after receipt of satisfactory proof of loss and (b) initiate loss adjustments within sixty (60) days after notification of loss by Complainants. Complainants seek, in addition to the amount of the Claim, statutory penalties of fifty percent of the amount found to be due from Defendant to Complainants, or one thousand dollars, whichever is greater, as well as reasonable attorney fees and costs.

c) <u>Violation of La. R.S. § 22:1973</u>: Complainants allege Defendant violated La. R.S. § 22:1973 whereby Defendant owed Complainants a duty of good faith and fair dealing to adjust the Claim fairly and promptly. Complainants seek, in addition to the amount of the Claim, an amount equal to two times the damages sustained by Complainants, or five thousand dollars, whichever is greater, as well as reasonable attorney fees and costs.

d) <u>Intentional and Negligent Infliction of Emotional Distress</u>: Complainants allege Defendants are liable to Complainants under the legal theories of intentional and negligent infliction of emotional distress for the manner in which Defendants handled and failed to adequately pay Complainants on the Claim entitling Complainants to the damages set forth herein.

e) <u>Negligent Claims Adjusting</u>: Complainants allege Defendants are liable to Complainants under the legal theory of negligent claims adjusting entitling Complainants to the damages set forth herein.

**2. Defendant's Claims:**

This case is a property damage dispute arising out of Hurricane Ida. Defendant disagrees with the amount of damages asserted by Plaintiff, as well as the cause of same.

Safepoint Insurance Company issued Policy No. SLCP0001200-01 to Mani Hospitality, LLC with policy periods of March 12, 2021 to March 12, 2022. On August 29, 2021, Hurricane Ida made landfall in Louisiana. Following same, Mani Hospitality, LLC made a claim for property damages with Safepoint.

At present, a dispute exists with respect to the value of the claimed loss. Coverage of some elements of damage is also in dispute. In support of same, Safepoint has asserted policy exclusions for defective workmanship and pre-existing damage(s), among other exclusions. Furthermore, Safepoint retained and relied upon qualified field personnel and experts to inspect the Property and determine both the origin of the claimed damages and the value or amount of same.

Specifically, Plaintiff first notified Safepoint of damage to the Property on September 29, 2021. Following same, Safepoint retained Insurance Claims Unlimited, Inc. ("ICU") to perform an independent inspection. That inspection was conducted on October 5, 2021. ICU found that the estimated loss was approximately $11,514.10 (RCV) which fell below the $131,790.32 (approximate) deductible. On December 21, 2021 ICU, after receiving an engineer report, prepared a supplemental report to address damage to the Property's awnings. The supplemental report found $6,182.35 (RCV) for sign/awning damage. After the application of the deductible and recoverable depreciation, Safepoint issued a payment to the plaintiff in the amount of $3,819.85.

4

During the course of the inspection, Safepoint retained an engineering firm, NV5, to determine the cause and origin of the claimed wind damage to the sign, exterior walls, windows, roof, and to determine the cause and duration of reported moisture intrusion. NV5's inspection found that there was no storm created opening. NV5 issued its report finding that the bulk of the damage to the Property was unrelated to Hurricane Ida. Safepoint thereafter received an estimate from JLR Building WerkX for approximately $3,336,778.31 in property damages.)

Notably, Safepoint timely demanded appraisal for this matter on February 8, 2022. It is Safepoint's understanding that the appraisers chosen by both parties worked amicably to resolve. On October 15, 2022, the appraisers reached an Award of $479,019.61 (RCV)/$448,661.26 (ACV). On October 28, 2022, Safepoint tendered payment pursuant to the appraisal award. Following same, Safepoint received no notification of continued dispute until the filing of the instant lawsuit.

**C.    PENDING MOTIONS**

None.

**D.    ISSUES**

**1.  Plaintiff's Issues:**

The legal issues currently in dispute are: a) did Defendant breach the insurance contract; b) if Defendant breached the insurance contract, was it in bad faith; c) did Defendant violate La. R.S. § 22:1892; d) did Defendant violate La. R.S. § 22:1973; e) was Defendant negligent in adjusting the Claim.

**2.  Defendant's Issues:**

5

Plaintiff contends Defendant is liable for both contractual and extra-contractual damages in connection with Defendant's failure to properly adjust and pay Plaintiff's hurricane claim. All of these issues are in dispute. Defendant disagrees with the amount of the Claimed Loss, specifically the extent of covered damages and the cost to repair or replace same. Pursuant to its adjuster and engineer's evaluations, reports and estimates, Safepoint does not dispute the amounts of related damages contained within those reports. Those amounts are as follows:

**January 14, 2022 Payment Breakdown:**
Gross Loss Building: $11,514.10
Less Non-Recoverable Depreciation: $3,270.00
Actual Cash Value: $8,244.10
Less Deductible: $131,790.32
**Net Due: $0.00**

Gross Loss Sign: $6,182.35
Less Recoverable Depreciation: $1,362.50
Actual Cash Value: $4,819.85
Less Deductible: $1,000.00
Total Recoverable Depreciation: $1,362.50
**Net Payment: $3,819.85**

**October 28, 2022 Appraisal Payment Breakdown:**

| Item | RCV | Depreciation | ACV |
|---|---|---|---|
| Building | $442,043.71 | $23,192.16 | $418,851.55 |
| APS/Other Structures | Not in This Appraisal | $0.00 | Not in This Appraisal |
| Fencing | $2,189.75 | $418.23 | $1,771.52 |
| BPP | Not in This Appraisal | $0.00 | Not in This Appraisal |
| BLI | Not in This Appraisal | $0.00 | Not in This Appraisal |
| Ordinance or Law | Not in This Appraisal | $0.00 | Not in This Appraisal |
| Mold/Fungi | $13,413.90 | $0.00 | $13,413.90 |
| Awnings | $11,832.25 | $2,772.96 | $9,059.29 |
| Signage | $9,540.00 | $3,975.00 | $5,565.00 |
| Totals | $479,019.61 | $30,358.35 | $448,661.26 |

**Net Payment: $311,651.29**

Safepoint avers that the above damages reflect the full amounts of any covered damages as a result of Hurricane Ida, after applying the policy deductibles and all policy loss payment

6

provisions. Based on the information received to-date, Plaintiff alleges that the total cost to repair/replace the covered building damages from Hurricane Ida is $3,336,778.31. Safepoint, in turn, disputes the difference between the amounts asserted by Plaintiff and that which was found by Safepoint's consultants as set forth in the respective reports and estimates. Safepoint further maintains that a genuine dispute as to the amount of the loss exists and that Safepoint has diligently and consistently adjusted this loss. All loss adjustments were made in accordance with the Policy and Louisiana's bad faith statutes. As such, Safepoint is not responsible for any damages pursuant to La. Stat. Ann. §22:1892 and §22:1973.

**E.    DAMAGES**

Separately, for each party who claims damages or an offset, set forth the computation of damages or the offset:

1. **Plaintiff's calculation of damages**:

Plaintiff's calculation of damages:

a) Diminution of the value of the Property;

b) Costs to adequately repair damages to the buildings, personal property, fences/arbors, and signs located on the Property;

c) Loss of business income;

d) Reimbursement for repairs Petitioner made to the Property;

e) Costs for content manipulation to repair the Property;

f) Repair and remediation expenses;

g) Statutory penalties, damages, attorneys' fees, and costs per La. C.C. art. 1997;

h) Statutory penalties, damages, attorneys' fees, and costs per La. R.S. § 22:1892;

7

 i) Statutory penalties, damages, attorneys' fees, and costs per La. R.S. § 22:1973;

 j) Statutory penalties, damages, attorneys' fees, and costs per La. R.S. § 22:1895;

 k) Pecuniary and non-pecuniary damages;

 l) Penalties, damages, and attorneys' fees;

 m) Other professional fees and costs of litigation;

 n) Costs of these proceedings;

 o) Costs of estimates, estimators, adjusters, professions, and/or experts; and

 p) Other damages as will be shown at trial

 **2. Defendant's calculation of offset and/or Plaintiff's damages:**

See Defendant's response to D. 2. Defendant avers that it has paid all owed and undisputed sums. There remains no additional payments owed. Furthermore, at all times the adjustment of this claim was handled in good faith and timely. As such, Defendant owes no sums for bad faith or extra contractual damages.

**F. SERVICE:**

Identify any unresolved issues as to waiver or service of process, personal jurisdiction, or venue:

None.

**G. DISCOVERY**

 1. Initial Disclosures:

  A. Have the initial disclosures required under FRCP 26(a)(1) been completed?

  [ ] YES [x] NO

8

In accordance with Local Rule 26(b), the parties shall provide their initial disclosures to the opposing party no later than 7 days before the date of the scheduling conference, unless a party objects to initial disclosures during the FRCP 26(f) conference and states the objection below.

    B.  Do any parties object to initial disclosures?

        [ ] YES [ x ] NO

For any party who answered *yes*, please explain your reasons for objecting.

2.  Briefly describe any discovery that has been completed or is in progress:

**By Plaintiff(s):** None at this time.

**By Defendant(s):** None at this time.

3.  Please describe any protective orders or other limitations on discovery that may be required/sought during the course of discovery.

**By Plaintiff(s):** None at this time.

**By Defendant(s):** None at this time.

4.  Discovery from experts: Identify the subject matter(s) as to which expert testimony will be offered:

**Plaintiff(s):** Plaintiff will likely seek expert testimony from construction and repair, mitigation, moisture intrusion, damage causation, forensic accounting and claims adjusting experts.

**Defendants(s):** Defendants will likely seek the expert testimony of Property Damage Appraisers, an Engineer, and a forensic accountant. The Property Damage appraiser will testify as to the extent of storm damage present at the Property, as well as testify to pre-existing and unrelated damage at the Property, including mitigation and moisture. The

9

Engineer will testify as to the causation of damages, i.e. wind damage, water damage. The Forensic Accountant will testify as to business loss expenses**.**

**H.    PROPOSED SCHEDULING ORDER**

If the parties propose an alternative timeframe for exchanging initial disclosures, please provide that proposed deadline: not applicable          .

2. Recommended deadlines to join other parties or to amend the pleadings:

    February 7, 2023          .

3. Filing all discovery motions and completing all discovery except experts:

    May 7, 2023         .

4. Disclosure of identities and resumés of expert witnesses (if appropriate, you may suggest different dates for disclosure of experts in different subject matters):

    Plaintiff(s): May 7, 2023        .

    Defendant(s): June 7, 2023     .

5. Exchange of expert reports:

    Plaintiff(s): May 7, 2023        .

    Defendant(s): June 7, 2023     .

6. Completion of discovery from experts: <u>September 7, 2023</u>.

7. Filing dispositive motions and Daubert motions: <u>October 7, 2023</u>.

8. All remaining deadlines and the pre-trial conference and trial date will be included in the initial scheduling order.

8. All remaining deadlines and the pre-trial conference and trial date will be included in the initial scheduling order.  The deadlines will be determined based on the presiding judge's schedule, within the following general parameters. The parties should not provide any proposed dates for these remaining deadlines.

    a. Deadline to file pre-trial order (approximately 16 weeks after dispositive motion deadline). <u>January 7, 2025.</u>

    b. Deadline to file motions in limine (approximately 20-22 weeks after dispositive motion deadline). <u>February 7, 2025</u>.

    c. Deadline to file an affidavit of settlement efforts (approximately 22-24 weeks after dispositive motion deadline). <u>February 28, 2025</u>.

    d. Deadline to submit joint jury instructions, voir dire, verdict forms, and trial briefs to the presiding judge (approximately 25-27 weeks after dispositive motion deadline). <u>February 28, 2025</u>.

    e. Pre-trial conference date (approximately 18-20 weeks after dispositive motion deadline). <u>January 15, 2025</u>.

    f. Trial date (approximately 27-29 weeks after dispositive motion deadline).

9. If the general outline of proposed deadlines does not fit the circumstances of your particular case, please provide a proposed joint schedule of deadlines which is more appropriate for your case. _____

**I.  TRIAL**

    1.    Has a demand for trial by jury been made?

       [ X ] YES [ ] NO

    1.    Estimate the number of days that trial will require: __4___

**J.  OTHER MATTERS**

Are there any specific problems the parties wish to address at the scheduling conference?

    [ ] YES [ X ] NO

**i.**    If the answer is *yes*, please explain:

**ii.**   If the answer is *no*, do the parties want the court to cancel the scheduling conference and to enter a scheduling order based on the deadlines set out in this report? **CHECK "NO" IF YOU HAVE NOT SUBMITTED JOINT PROPOSED DEADLINES.**

    [ ] YES [X ] NO

**K.  SETTLEMENT**

    **1.**    Please set forth what efforts, if any, the parties have made to settle this case to date.

The parties have not engaged in any settlement negotiations, however appraisal was invoked and an award was issued on October 15, 2022.

    **2**.    Do the parties wish to have a settlement conference:

    [X ] YES [ ] NO

If your answer is *yes,* at what stage of litigation would a settlement conference be most beneficial?

A settlement conference would be beneficial after discovery is complete.

**L.  CONSENT TO JURISDICTION BY A MAGISTRATE JUDGE**

You have the right to waive your right to proceed before a United States District Judge and may instead consent to proceed before a United States Magistrate Judge. Indicate whether, at this

11

time, all parties will agree, pursuant to 28 U.S.C. § 636(c), to have a Magistrate Judge handle all the remaining pretrial aspects of this case and preside over a jury or bench trial, with appeal lying to the United States Court of Appeals for the Fifth Circuit.

All parties agree to jurisdiction by a Magistrate Judge of this court:

[ ] YES [ X ] NO

Report dated: December 7, 2023.

Respectfully submitted,

| /s/ Sye J. Broussard | /s/ Rachel L. Flarity |
|---|---|
| **SYE J. BROUSSARD (33035)** | **MATTHEW D. MONSON (25186)** |
| **JACKIE DOVE BROUSSARD (33539)** | **JOHN C. HENRY (18948)** |
| **VICTOR M. DANTIN (35462)** | **RACHEL L. FLARITY (33131)** |
| **BROUSARD & DOVE, APLC** | **JOHN D. MINEO, IV (36587)** |
| 7605 Park Avenue | **ERIN W. BERGGREN (37551)** |
| Houma, Louisiana 70364 | **LAUREN A. LAM (37758)** |
| Telephone: (985) 868-4800 | **KYLE C. MATTHIAS (38338)** |
| Facsimile: (985) 868-4899 | **ROWAN W. STOEHR (39061)** |
| Email: Sye@BroussardDoveLaw.com | **AUSTIN T. WELCH (40100)** |
| **Counsel for Plaintiff,** | **THE MONSON LAW FIRM, LLC** |
| **Mani Hospitality, LLC** | 5 Sanctuary Blvd., Ste. 101 |
| | Mandeville, Louisiana 70471 |
| | Telephone: (985) 778-0678 |
| | Facsimile: (985) 778-0682 |
| | Email: Rachel@MonsonFirm.com |
| | **Counsel for Defendant,** |
| | **SafePoint Insurance Company** |